United States District Court
Southern District of Texas
**ENTERED**
September 29, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| GLORIA ELIZABETH IRFAN, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:22-cv-01997 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

## OPINION AND ORDER

Plaintiff Gloria Elizabeth Irfan ("Irfan") seeks judicial review of an administrative decision denying her application for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Irfan and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 12, 14. After reviewing the briefing, the record, and the applicable law, Irfan's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**.

## BACKGROUND

Irfan filed an application for supplemental security income under Title XVI of the Act on July 15, 2020, alleging disability on the basis of bipolar disorder. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Irfan was not disabled. Irfan requested Appeals Council review, and on April 8, 2022, the Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Irfan had not engaged in substantial gainful activity since July 15, 2020. *See* Dkt. 8-1 at 24.

The ALJ found at Step 2 that Irfan suffered from "the following severe impairments: obesity, bipolar disorder, major depression, anxiety disorder, and alcohol abuse." *Id.* at 25.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.* at 27–29.

Prior to consideration of Step 4, the ALJ determined Irfan's RFC as follows:

> [Irfan] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except [she] can lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday with normal breaks. She can frequently balance, stoop, crouch, crawl, kneel, and climb. [Irfan] is limited to simple, routine, repetitive tasks, requiring no more than 1, 2 or 3 step instructions, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes in a routine work setting. She is limited to occasional interaction with coworkers, supervisors, and the general public.

*Id.* at 29–30.

At Step 4, the ALJ found that Irfan is unable to perform any past relevant work. Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that

"there are jobs that exist in significant numbers in the national economy that [Irfan] can perform." *Id.* at 33. Based on the Medical-Vocational Rules, the ALJ explained that Irfan is not disabled. *See id.* at 33–34.

## DISCUSSION

Irfan advances three arguments in support of remand:

1. The mental RFC determination is not supported by substantial evidence, and the ALJ violated agency regulations by failing to properly consider and explain his analysis of the factors of supportability and consistency with regard to the opinion of Fernando Torres, M.D., Plaintiff's treating psychiatrist.

2. The ALJ's physical RFC determination is unsupported by substantial evidence as he failed to rely on any medical opinion and instead made up the RFC out of whole cloth.

3. The ALJ's rejection of Plaintiff's description of her symptoms fails to comply with 20 C.F.R § 416.929 and SSR 16-3p.

Dkt. 13 at 1. For the reasons explained below, none of these arguments are persuasive.

### A.   THE ALJ DID NOT ERR[1] IN HIS EVALUATION OF DR. TORRES'S ONE-PAGE, JUNE 5, 2020 MEDICAL SOURCE STATEMENT

#### 1.   *The Revised Regulations*

"On January 18, 2017, the Social Security Administration promulgated new regulations applicable to disability claims filed on or after March 27, 2017." *Williams v. Kijakazi*, No. 23-30035, 2023 WL 5769415, at *2 (5th Cir. Sept. 6, 2023). Because Irfan filed for benefits after March 27, 2017, the ALJ was required

---

[1] In her briefing, Irfan alternates between challenging the ALJ's decision both for legal error and for being unsupported by substantial evidence. *See* Dkt. 13 at 10 ("The mental RFC determination is not supported by substantial evidence and the ALJ violated agency regulations by failing to properly consider and explain his analysis of [Dr. Torres's opinion]."); *id.* at 15 ("Plaintiff asserts the ALJ violated 20 C.F.R. § 416.920c(b)(2) by failing to properly weigh and explain his consideration of the opinion of Dr. Torres, yielding an RFC determination that is not supported by substantial evidence."). Legal error and substantial evidence are separate, albeit related, inquiries. *See Est. of Morris*, 207 F.3d at 745. The argument that the ALJ failed to comply with agency regulations is one of legal error. *See Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 498–501 (S.D. Miss. 2021). That error is harmful if it prevents me "from determining whether substantial evidence supported [the ALJ's] decision." *Id.* at 501.

to apply the new regulations. "These new regulations eliminate the old hierarchy of medical opinions, no longer provide for any inherent or presumptive weight, and do away with the examining and non-examining physician terminology." *Id.* Instead, in determining what weight, if any, to give a medical opinion, the ALJ must consider five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone ex rel. Vellone v. Saul*, No. 1:20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)). "[C]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley*, 587 F. Supp. 3d at 499 (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) (quotation omitted).

### 2.   *The ALJ Properly Evaluated Dr. Torres's Letter*

Irfan argues that "the ALJ failed to properly weigh and explain his consideration of the opinion of [Irfan]'s treating psychiatrist," Dr. Fernando Torres. Dkt. 13 at 11. Before addressing this argument, it's worth reviewing the contents of Dr. Torres's letter and the ALJ's analysis. Here is everything of substance that Dr. Torres wrote in the medical source statement at issue:

> Greeting. This letter is a medical certificate advocating for Gloria Ontiveros. Gloria Ontiveros, age 51. I have been his [sic] attending psychiatrist at Aspire Behavioral Hospital since May 31, 2020. She presented with Bipolar Disorder, Manic Episode with Psychosis. She has had numerous manic and depressive relapses resulting in at least psychiatric hospitalizations since about 12 years ago. She has not been able to maintain employment on account her mood disorder results in poor performance of duty or psychotic decompensation due to the environmental stressors of employ. She even tried to take her life on three occasions.
>
> Gloria Ontiveros is a well meaning and well intentioned citizen. Her mental illness and the unpredictable nature of the illness exacerbations put her at an elevated risk category for mental illness and an inability to attain or maintain employment.

Dkt. 8-1 at 814. And here is everything the ALJ had to say of that 10-sentence letter:

> The claimant's treating psychiatrist, Fernando Torres, M.D., completed a medical statement dated June 5, 2020. He had been her attending at Aspire Behavioral Hospital since May 31, 2020. She represented [sic] with bipolar disorder, manic episode with psychosis. She had had numerous manic and depressive relapses. She has not been able to maintain employment on account of her mood disorder resulting in poor performance of duty or psychotic decompensation due to the environmental stressors of employ. She tried to take her own life on three occasions. Her mental illness and the unpredictable nature of the illness exacerbations put her at an elevated risk category for mental illness and an inability to attain or maintain employment (Exhibits D14F and D15F). The undersigned finds this opinion unpersuasive. The opinion was made after only six days of knowing/treating the claimant. The opinion is inconsistent with the evidence, especially since she was working, and had been for 18 months, part-time.

*Id.* at 31.

Irfan contends that the "ALJ's decision in this case fails to adequately address the factor of supportability *or* the factor of consistency." Dkt. 13 at 12. Specifically, Irfan argues that the ALJ "provides no clue as to why a treating source opinion offered early in the overall period of treatment would somehow be less reliable than a one-time agency examination or state agency opinions which are based on a review of the record by physicians who never saw the individual"; and that there is "no genuine conflict between the opinion of Dr. Torres and the evidence of Plaintiff's [part-time work] dishwashing for four hours per day." *Id.*

The Commissioner retorts that Irfan's "contention that the ALJ's analysis of the June 5, 2020, statement was insufficient is misplaced from the start" because Dr. Torres's "statement amounts to a declaration that [Irfan] was unable to work, an issue reserved to the Commissioner." Dkt. 14 at 7–8. To state the Commissioner's argument succinctly: Irfan's argument presumes that Dr. Torres's statement was a "medical opinion" that the ALJ was required to evaluate under the revised regulations. It was not. "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in the abilities listed in . . . this section." 20 C.F.R. § 416.913(a)(2). Specifically,

> (i) Medical opinions in adult claims are about impairment-related limitations and restrictions in:
>
> . . . .
>
> (B) [A claimant's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.

*Id.* Moreover, as the Fifth Circuit has explained:

> Under 20 C.F.R. § 404.1520b(c)(3)(i), statements that a claimant is *or is not* "disabled, blind, able to work, or able to perform regular or continuing work" are "[s]tatements on issues reserved to the Commissioner" and deemed "inherently neither valuable nor persuasive." *An ALJ is specifically relieved from providing any analysis about how such evidence was considered.* § 404.1520b(c).

7

*Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *2 (5th Cir. Jan. 18, 2023) (emphasis added).

Dr. Torres's June 5, 2020 medical source statement exemplifies the type of statement from which the "ALJ is specifically relieved from providing any analysis." *Id*. To start, the first through sixth, eighth, and ninth sentences of Dr. Torres's letter do not come close to qualifying as medical opinions because they are either pleasantries, introductions, or restatements of Irfan's medical history—none of these sentences discuss what Irfan "can still do despite [her] impairment(s)." 20 C.F.R. § 416.913(a)(2). As for the final sentence, Irfan concedes that Dr. Torres's "statement does contain an opinion as to the ultimate issue." Dkt. 15 at 2.

So, all that remains is for me to decide whether the seventh sentence constitutes a "medical opinion" under § 416.913(a)(2). This is that sentence again: "[Irfan] has not been able to maintain employment on account her mood disorder results in poor performance of duty or psychotic decompensation due to the environmental stressors of employ." Dkt. 8-1 at 814. Irfan contends that Dr. Torres "identifies work-related restrictions and provides evidence of what [Irfan] can and cannot do despite her impairments." Dkt. 15 at 2. Yet, Irfan cannot identify *anything* that Dr. Torres says she *can* do despite her impairments. Rather, Dr. Torres's opinion is that Irfan "has not been able to maintain employment." Dkt. 8-1 at 814. That is, at most, a statement of fact—at worst it is an impermissible opinion as to the ultimate issue. Dr. Torres's reasoning as to *why* Irfan cannot maintain employment—her mood disorder and psychotic decompensation—does not change the fact that he is opining on an issue reserved to the Commissioner. Because Dr. Torres did not offer a medical opinion the ALJ was required to analyze, the ALJ cannot have erred in his analysis of Dr. Torres's statement.

B. THE ALJ'S PHYSICAL RFC DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Irfan next argues that the "ALJ's physical RFC determination is unsupported by substantial evidence as he failed to rely on any medical opinion and instead

8

made up the RFC out of whole cloth." Dkt. 13 at 15. Specifically, Irfan argues that the ALJ "erred when he declined to arrange for a consultative examination, despite finding no persuasive medical opinions in the record." *Id.* at 17. In support, Irfan cites to *Thaler v. Saul*, No. 5-19-cv-01468, 2021 WL 8083369, at *3 (W.D. Tex. Feb. 22, 2021), for the proposition that "an ALJ is not qualified to interpret raw medical data in functional terms." Dkt. 13 at 17. But Irfan overlooks the fact that *there is no raw medical data* concerning her physical limitations in the record. Indeed, Irfan's own recounting of the medical evidence relevant to her claim contains no evidence of any physical limitation. *See id.* at 3–6. There is only a fleeting mention of her obesity in the form of a BMI number, *see* Dkt. 8-1 at 2092, and her own testimony regarding an old work injury that affects a ligament in her left leg. *See id.* at 65–67. This is not raw medical data that requires expertise to interpret.

Irfan also overlooks that "[t]he ALJ reviewed the medical evidence of record and determined that [Irfan] is actually *more* limited than [the state agency] opinions suggest." *Stanley v. Comm'r of Soc. Sec.*, No. 4:22-CV-00527, 2023 WL 2457534, at *4 (S.D. Tex. Mar. 10, 2023). Moreover, Irfan fails to articulate how "a consultative medical examination 'could and would have adduced evidence that might have altered the result.'" *Id.* at *5 (quoting *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). Irfan argues that the "ALJ's error in adopting an unsupported physical RFC is harmful because a restriction to sedentary exertion would result in Plaintiff being found disabled," Dkt. 13 at 18, but Irfan points to no evidence suggesting that a consultative medical examination would have somehow found her to be limited to sedentary work. Thus, even if it was error for the ALJ to not have ordered a consultative examination—to be clear, it was not—such error would be harmless. *See Stanley*, 2023 WL 2457534, at *5.

C. **THE ALJ ERRED IN EVALUATING IRFAN'S SYMPTOMS, BUT HIS ERROR WAS HARMLESS**

Irfan's final argument is that the "ALJ's rejection of [Irfan]'s description of her symptoms fails to comply with 20 C.F.R. § 416.929 and SSR 16-3p." Dkt. 13 at 18. Specifically, Irfan argues the ALJ erred when he rejected her description of her symptoms because "there is no objective medical evidence to show that the severity would prevent her from doing a job that would follow the above outlined residual functional capacity assessment." *Id.* at 19 (quoting Dkt. 8-1 at 31). I agree. The regulations state that the Commissioner "will not reject [a claimant's] statements about the . . . effect [her] symptoms have on [her] ability to work . . . *solely because the available objective medical evidence does not substantiate [her] statements*." 20 C.F.R. § 416.929(c)(2) (emphasis added). Yet that is exactly what the ALJ did here. Thus, I agree with Irfan that the ALJ erred in evaluating her symptoms. The only question now is whether that error was harmless. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("Having determined that the ALJ erred . . ., we must still determine whether this error was harmless.").

"'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)). Only if a claimant can demonstrate that his substantial rights were affected—in other words, that the error was not harmless—is remand required. *See id.* at 449. Errors are harmless where "[i]t is inconceivable that the ALJ would have reached a different conclusion." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Irfan argues that

> A different administrative conclusion is conceivable as [her] testimony (particularly in light of the assessment by Dr. Torres) shows that [she] has a substantial loss of ability to (on a sustained basis) maintain consistent performance and handle pressures in a work setting as a result of her bipolar disorder with psychosis.

Dkt. 13 at 21. *See also* Dkt. 15 at 5 (same). In other words, the only evidence that Irfan offers as to how a different evaluation of her symptoms would have changed the result is to point to Dr. Torres's statement, which I have already determined is of no relevance. That is not enough to demonstrate prejudice. *See Stanley*, 2023

10

WL 2457534, at *5. Accordingly, I find that the ALJ's error in evaluating Irfan's symptoms was harmless.

## CONCLUSION

For the reasons discussed above, Irfan's motion for summary judgment (Dkt. 12) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 14) is **GRANTED**.

SIGNED this 29th day of September 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE